Anderson's Assignees v. Tuttle.

ANDERSON'S ASSIGNEES in Bankruptcy, vs. TUTTLE and others.

1. Equity will look behind judgments and assignments under which an alleged creditor seeks to have property, the title whereto was, at the time of the levy thereon, in a third person, declared to be the property of the defendant, and to be held in trust for him, and sold to pay the amount due the complainant on the judgments, with a view to determining whether he is entitled to the relief he asks.

2. An assignee in bankruptcy of such creditor, succeeding by operation of law to his rights, occupies merely the position which he occupied ; and if the creditor was not entitled to the relief, neither is the assignee.

3. Where a debtor causes property to be conveyed to a third person because there are judgments against him, and procures assignments of the judgments to be taken by another, and a suit to be brought thereon to have the property declared to be the debtor's, and sold to pay the complainant (really the debtor) the amount due thereon, no relief can be given. This court will not aid a fraudulent debtor to do, by indirection, what it would not assist him to do directly.

On final hearing, on pleadings and proofs.

*Mr. C. Parker,* for complainant.

*Mr. J. Vanatta,* for defendant, Sarah L. Stewart.

THE CHANCELLOR.

The bill in this cause was filed in the latter part of December, 1868, by John C. Anderson, as owner, by assignment, of two judgments recovered against Daniel L. Tuttle, in the Circuit Court of the county of Morris; one by George H. Loop and Henry Allen, on the 6th of October, 1857, for $249.17 damages and costs; and the other by Horatio N. Ferris, William H. Lee, and Aaron J. McVean, on the 10th of September, 1859, for $142.35, damages and costs; and as plaintiff in and owner of a judgment recovered by confession against Daniel L. Tuttle in the same court, on the 4th of December, 1868, for $2303.06 damages and costs. Under a *fieri facias de bonis et terris*, issued on the Loop and Allen judgment, a levy was made on the 2d of November, 1868, upon the right, title and interest of Tuttle in four tracts of land in Morris county. Executions against goods and lands had been issued on the other judgments before the filing of the bill, and had been returned on the 5th of December, 1868, unsatisfied for want of property, real or personal, whereon to levy.

The bill prays that the land levied on under the Loop and Allen execution, the title whereto was then in Sarah L. Stewart, and the undivided half of certain other land, the title whereto was then held by Augustus W. Cutler, may be declared to be the property of Daniel L. Tuttle, and to be held in trust for him, and may be sold to pay the amount due the complainant on his judgments. It alleges that the property sought to be reached is the property of Daniel L. Tuttle, and was bought and paid for by him, and that he caused the title thereto to be taken by Mr. Cutler and Mrs. Stewart, respectively, with the intent to hinder, delay, and defeat his creditors. The claim of Daniel L. Tuttle to the property in question was passed upon in *Tuttle* v. *Cutler*, 4 *C. E. Green* 549, with a result adverse to him, both in this court and in the Court of Errors and Appeals. Though not a party to that suit, he had, as appears by the opinion of the last mentioned court, as ample an opportunity for putting his

case before the court as he would have had if he had been made a party, except that he had not had the benefit of his answer.

The evidence in this case is clear that, if the property in question was indeed the property of Daniel L. Tuttle, he caused the conveyances above referred to, to be made to Mr. Cutler and Mrs. Stewart, with the design of protecting it from his creditors. It is evident, too, that John C. Anderson was not only cognizant of that design, but aided in it. And it is also clear that this suit is but a mere contrivance to effect, if possible, for Tuttle, what he could not otherwise accomplish; to enable him, through the instrumentality of Anderson, in the disguise of a creditor, to avail himself of his fraud.

Anderson is, under the circumstances, entitled to no aid at the hands of a court of conscience. The judgment of Loop and Allen, which he alleges was assigned to him in 1866, had been assigned in 1859 to Mr. Pitney, their attorney, in trust for themselves. In a letter written by Anderson to Tuttle, in July, 1866, (the assignment under which he claims is dated in March preceding,) he expresses surprise at receiving " another paper to get signed," and adds, " you must have a fool of a lawyer, or he would know what he wants. If it was a *square* business, I would not mind to get a dozen papers signed; as it is, if Pitney should come across Loop, there would be a time with me. Now what I have to say is this : Get a lawyer to make out the papers that knows what you want, and then have them made out right, and have all that you want made out at once, and then I will have them signed, if there is a dozen. I am ashamed to go so often to get the same thing ; it looks suspicious, and will excite suspicion."

Tuttle, in his testimony, admits that he caused the assignment of that judgment to be drawn by a lawyer in Morristown, and that he gave it to Anderson, and asked him to go and get it signed.

The reference in the letters to various applications for assignments, is made intelligible by Tuttle's statement, that he thinks he has seen two or three assignments of that judgment.

When asked whether he meant to swear that he did not, directly or indirectly, furnish Anderson with any money, or other valuable thing, to pay for that assignment, he answered, I never have, *to my recollection.*

The assignment of the judgment in favor of Ferris, Lee and Devean was also drawn in Morristown, by a lawyer employed by Tuttle for the purpose, and the assignment was obtained by Anderson, at the request of Tuttle. The consideration expressed in the assignments of the Loop and Allen judgment, and the Lee, Ferris and Devean judgment to Anderson, is, as to one of them, one dollar, and as to the other, " value received."

Neither Loop and Allen, nor Ferris, Lee and Devean, were, or had been, pressing Tuttle for payment for many years. The other creditors, Slosson, Barrett & Co., and Granniss, Stewart and Allen, an assignment of whose claims against Tuttle, Anderson claims to have, had not even obtained judgment on their claims, which at the time when, as Anderson says, they were assigned to him, were fifteen or sixteen years old. The assignment of these claims was obtained by arrangement between Anderson and Tuttle, undeniably with a view to and for the purpose, and only for the purpose, of this suit. The decision in Tuttle *v.* Cutler, in the court of last resort, was rendered in November Term, 1868 ; the assignments of the judgments of Ferris, Lee and Devean is dated on the 8th of December following, and the assignment of the claims of Slosson, Barrett & Co., and Granniss, Stewart and Allen, were also obtained after that decision, and manifestly in consequence of it. It is true that as to the judgment of Ferris, Lee and Devean, Tuttle says that Anderson had bought it as early as 1866, and had paid for it then, but it is evident from his testimony, that it was then receipted for, and the receipt delivered to him, and though Anderson was satisfied with the paper (which was drawn by himself) which he had got in the payment of the money for the judgment, Tuttle says he was himself dissatisfied with it ; and yet his dissatisfaction did not induce

him to take any action with regard to it, until after the decision in the Court of Errors and Appeals.

The reason he gives for obtaining the assignment is, that he desired that Anderson should have title to the judgment, so as to be able to cancel it of record when he should have received the amount due thereon. It does not appear that Anderson ever paid anything for any of these claims. Although the *bona fides* of his claim in this suit was denied, and it was charged that he was but the agent of Tuttle in obtaining control of those claims, and that the debts represented by the judgments were all, in fact, paid off and satisfied, yet he was not sworn in the cause, nor did he offer any evidence in support of his demands, or in assertion of the *bona fides* of his claim. It is impossible to resist the conclusion, that Tuttle was the real complainant in this cause when the bill was filed. It is insisted, however, by the complainants' counsel, that this court will not look behind the judgments and assignments. But this court will not be deceived by disguises, and will not fail to recognize the true character of the complainant in such a case as this, with a view to determining whether he is entitled to the relief he asks. It will not aid a fraudulent debtor to do, by indirection, what it would not assist him to do directly. The real complainant in this suit is Daniel L. Tuttle. It was urged, also, by the complainants' counsel, that the fact that the assignees in bankruptcy of Anderson are now the complainants, would relieve the case from any objection or criticism on this score. The situation, however, is not changed by the substitution of the assignees. They have succeeded, by operation of law, to the rights of Anderson. They occupy merely the position which he occupied, and the result must be the same as if he were still complainant.

The view which I have thus taken of the case, renders it unnecessary to consider the question, elaborately discussed on the hearing, as to whether there is a resulting trust in favor of Tuttle in the undivided half of the property conveyed by the commissioners to Mr. Cutler, and whether Tuttle is, in

fact, the owner thereof, and of the other land in dispute conveyed by Anderson and his wife to Mrs. Stewart, and not sold in partition.

As to the school-house lot, and the Larder lot, Mrs. Stewart disclaims the ownership of the latter, and claims not to have been aware that the title thereto was in her. She appears, by the testimony of Tuttle, not to have title for the school-house lot. He says the first deed for it from Anderson and his wife, was made to her as grantee, but that he afterwards took it to Anderson, and either had his own name substituted as that of the grantee therein, or had a new deed made to himself as grantee.

There can, therefore, be no decree against her as to that property; and as to the Larder lot, it appears that it was conveyed to her without her knowledge, and Tuttle says he caused it to be conveyed to her because there were judgments against him. For the reasons before given, there can be no relief given as to that lot.

The bill will be dismissed, with costs.